IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL R. LAIDLEY, et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | NO. 09-395 |
| SHAWN JOHNSON, et al. | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
OPTION ONE MORTGAGE CORPORATION, N/K/A SAND CANYON
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' claims against Option One arise from Plaintiffs' eventually successful attempt to obtain financing for their purchase of a duplex. Plaintiffs applied with a number of lenders before seeking out Option One. Each of those lenders, it seems, denied Plaintiffs' loan applications. Option One extended financing to the Plaintiffs, enabling them to purchase an investment property. Plaintiffs testified that they are current on their mortgage payments. Yet, they are suing Option One because they blame Option One for the actions of the mortgage broker that they chose to help them get a loan. They also aver, but cannot prove, that Option One committed acts which violate the state unfair trade practices act. Plaintiffs argue that Option One concealed fees collected at closing or split them with the mortgage broker, Parkside Mortgage. Plaintiffs' discovery responses and the testimony elicited at the depositions prove, however, that to the extent that any promises or representations were made to Plaintiffs about their loan terms, those promises were made by people and entities other than Option One and Option One cannot be held liable for the actions of those entities. Further, there is not one shred of evidence that any of the fees were split between Parkside Mortgage and Option One or were otherwise

improper. Plaintiffs' claims are wholly unsupported by the evidence and, therefore, Option One is entitled to summary judgment on all claims.

I.   **PROCEDURAL HISTORY**

Plaintiffs commenced this action by filing a complaint seeking, *inter alia*, termination of any security interest in Plaintiffs' property, return of money paid in connection with the transaction, and a declaration that they are not liable for finance charges. Option One and then co-defendant American Home Mortgage Corporation filed a Motion for Judgment on the Pleadings, conducted full discovery and later filed a Motion for Summary Judgment, seeking judgment in their favor and dismissal of the complaint. Ultimately, the Motion for Judgment on the Pleadings was granted and the complaint dismissed.

Plaintiffs moved for leave to amend the complaint and leave was granted on December 22, 2009. The Amended Complaint ("Amended Complaint") asserts one cause of action against Option One for violation of the "catch-all" provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(xxi). A true and correct copy of the Amended Complaint is attached hereto as Exhibit "A". Though not entirely clear, it seems that the alleged violations can be segregated into two general categories: (i) violations of TILA and RESPA are violations of the UTPCPL and (ii) Parkside Mortgage ("Parkside Mortgage") and Shawn Johnson ("Johnson") made misrepresentations which are attributable to Option One.

Option One filed a Motion to Dismiss the Amended Complaint. In the Plaintiffs' response to the Motion to Dismiss, Plaintiffs conceded that they are not arguing that the TILA or RESPA violations form the basis for their UTPCPL claim. Rather, they argue that Option One violated the UTPCPL by its deception in making "direct misrepresentations via Defendant's split (i.e. kick-backs"), concealed, not incurred, and non-customary pre-paid finance charge paid by

Plaintiffs directly to Defendant and/or as a cost of Defendant's extension of credit." Response, p. 4. This conduct, it is argued, "either through its agents-mortgage brokers [via agency or joint-venture] or directly with regard to the pre-paid finance charges, constitutes both fraud <u>and</u> conduct having a tendency to confuse. Response, p. 5. The Court denied Option One's Motion to Dismiss on June 8, 2010.

## II. STATEMENT OF MATERIAL FACTS

Plaintiffs are both graduates of Temple University who decided to purchase a house together instead of renting separate apartments. See Deposition Transcript of Jamal Laidley ("Laidley Trans."), a true and correct copy of which is attached hereto as Exhibit "B", at 8:23-9:8, 19:19-20:1 and Deposition Transcript of Brian Harvey ("Harvey Trans."), a true and correct copy of which is attached hereto as Exhibit "C", at 6:8-18. Mr. Harvey is particularly well schooled in real estate, having a bachelor's degree in Finance, Business Law and Real Estate. Harvey Trans. at 6:14-18. Plaintiffs hired a real estate broker and also obtained a pre-approval from Countrywide for a conventional, 30 year fixed rate mortgage so that they would be viewed as serious buyers. Laidley Trans. at 22:13-20, 23:7-17.

Countrywide pre-approved Plaintiffs for a loan amount of up to $248,040 with a down payment of $5,625. Laidley Trans. at 66:15-22; Harvey Trans. at 48:11-15. According to Mr. Laidley, Plaintiffs did not go through with the loan with Countrywide because they wanted their mortgage company to have local branch offices. Laidley Trans. at 33:10-16. According to Mr. Harvey, the reason for not proceeding with Countrywide is that they wanted to use defendant Johnson, a loan officer at Wachovia Bank, who they believed could provide them with 100% financing. Harvey Trans. at 22:2-8. Mr. Harvey met Johnson at a speaking engagement given by Johnson at Temple University and based upon that encounter, Mr. Harvey "trusted" Johnson.

Id. at 20:2-13, 23:22-23; Laidley Trans. at 32:7-20. With a pre-approval in hand supplied by Johnson for 100% financing, Plaintiffs entered into an agreement to purchase 2711 Cranston Road, Philadelphia, PA 19131 (the "Property"). Laidley Trans. at 36:9-14, 38:11-13, 74:14-75:3; Harvey Trans. at 54:9-14. A true and correct copy of the Agreement of Sale with Addenda, is attached hereto as Exhibit "D."

### A. Plaintiffs' Relationship with the Parkside Defendants

Plaintiffs testified that despite the pre-approval for 100% financing from Johnson at Wachovia, during the process between the pre-approval stage to actually getting an approval, they got conflicting information or no information at all from Johnson as to the status of their loan. Laidley Trans. at 42:3-43:9, 44:5-9. Ultimately, Johnson informed Plaintiffs that Wachovia denied their loan application. Harvey Trans. at 23:13-21, 24:22-25:14. Despite requests for a written denial, Johnson never provided one to Plaintiffs. Id.

After Wachovia denied Plaintiffs' loan application, Johnson referred them to his mortgage brokerage, Parkside Mortgage. Laidley Trans. at 39:4-18. On behalf of Plaintiffs, Parkside Mortgage and Johnson thereafter searched for another mortgage program, ultimately obtaining approval from Option One at a loan amount of $201,600, an annual interest rate of 9.75% and requiring a 10% down payment (hereinafter, the "Loan"). Id. at 62:23-65:9. A true and correct copy of the loan application is attached hereto as Exhibit "E."

Plaintiffs' loan application to Option One is dated June 26, 2007 and was submitted to Option One on that same day. Laidley Trans. at 62:23-65:9; see also Deposition Transcript of Dale Sugimoto, President of Sand Canyon Corporation ("Sugimoto Trans.") at 48:4-18, a true and correct copy of which is attached hereto as Exhibit "F." Remarkably, the loan closed a mere seven (7) days later, on July 3, 2007. Laidley Trans. at 19:3-6, 50:21-51:5; Harvey Trans. at 32:19-23.

### B. Plaintiffs' Allegations Concerning the Loan Origination

The gravamen of Plaintiffs' Complaint appears to relate to purported misrepresentations and omissions by Parkside Mortgage, Countrywide and/or Wachovia in connection with origination of the Loan. Laidley Trans. at 6:17-22, 116:19-117:13. Option One had never even heard of Plaintiffs until June 26, 2007. See Sugimoto Trans. at 48:4-18. All of Plaintiffs' dealings up to that date were with other entities and had absolutely nothing to do with Option One. Id.

Plaintiffs further complain that the loan simply took too long to close and that by the time the loan closed, they had been living with family and friends for several days because their leases had expired. Laidley Trans. at 89:7-12; Harvey Trans. at 41:13-24. However, the evidence shows that the loan closing took only seven (7) days from the time of application to Option One. See Sugimoto Trans. at 48:4-18. So what was the delay? One reason was that the Property appraised for less than the agreed upon sales price, causing the parties to negotiate a new sales price. However, that occurred well before the loan application was submitted to Option One. Once Option One became involved on June 26, 2007, the loan closed rapidly.

The Agreement of Sale was originally dated May 6, 2007 and forecasted a settlement date of June 3, 2007. Laidley Trans. at 44:1-4, 49:20-50:1. However, the appraisal came in low and the parties agreed, on June 11, 2007, to decrease the sales price. Laidley Trans. at 46:20-24, 47:17-48:11; Harvey Trans. at 30:20-24. Thereafter the parties agreed to change the settlement date to June 28, 2007. Harvey Trans. at 31:18-32:3. According to Harvey, the reason for the delay to the settlement date was due to Parkside or Wachovia. Id. at 32:4-8. With a settlement date of June 28, 2007, it is not known why Parkside did not submit Plaintiffs' application to Option One until two days prior to the settlement. However, once submitted, Option One quickly approved the loan, making it possible for Plaintiffs to purchase the Property when their

5

attempts at financing through Countrywide, Wachovia and perhaps others, failed. The evidence proves that Option One did not have anything to do with Plaintiffs or the delay caused to Plaintiffs by the Parkside Defendants. Laidley Trans. at 6:17-22, 116:19-117:13; Sugimoto Trans. at 48:4-18.

### C. Option One's relationship with Parkside Mortgage

Parkside Mortgage was not an agent of Option One. Sugimoto Trans. at 17:13-22. The agreement between Option One and Parkside Mortgage states that "[n]othing herein contained shall be deemed or construed to create a partnership, agency or joint venture between the parties hereto. The services of Broker shall be rendered as an independent contractor and not as agent for the Lender, and Broker shall not represent to any applicant(s) that it is an agent for the Lender. This Agreement creates a non-exclusive relationship between the parties." See Mortgage Broker Agreement, ¶ 15, a true and correct copy of which is attached hereto as Exhibit "G." In addition, the president of Option One testified that he is not aware that there was any special relationship between Option One and Parkside Mortgage. Sugimoto Trans. at 18:5-22.

### D. Plaintiffs' Claims

Plaintiffs aver that Option One violated the federal Truth-in-Lending Act ("TILA") and the Real Estate Settlement and Procedures Act ("RESPA") by underdisclosing the finance charge, overcharging for various services and charging a yield spread premium, each of which was shared with Parkside Mortgage. Despite these allegations, Plaintiffs have clarified that they only assert a cause of action under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiffs admit in their Response to the Motion to Dismiss that they do not allege that violations of TILA or RESPA are per se violations of UTPCPL but rather that various actions concerning the fees is the violation.

Plaintiffs are seeking actual and treble damages, equitable relief, pain and suffering and punitive damages. By this Motion, Option One seeks judgment in its favor and dismissal of the Amended Complaint.

## II. ARGUMENT

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial." Celotex Co. v. Catrett, 477 U.S. 317, 322 (1986); Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173 (3d Cir. 1988). "The moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997) (citing Country Floors, Inc. v. Partnership Composed of Gepner & Ford, 930 F.2d 1056, 1061 (3d Cir. 1991)).

Once a party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, the burden is on the non-moving party to set forth specific material facts demonstrating a genuine issue for trial. Celotex, 477 U.S. at 323. A fact issue is considered "genuine" only if there is sufficient evidence on which a reasonable jury could base a finding in favor of the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986). A plaintiff may not rely on

the allegations of his Complaint or on his own speculation as to what evidence he might produce at trial to meet his burden under Rule 56. Id.

### B. PLAINTIFFS HAVE NOT PROVEN A JOINT VENTURE OR AN AGENCY RELATIONSHIP BETWEEN PARKSIDE MORTGAGE AND OPTION ONE

Plaintiffs aver in the Amended Complaint that Option One should be held liable for actions of the mortgage broker, Parkside, through "implied authority, joint venture, aiding and abetting liability and ratification." Amd. Compl., ¶ E. The evidence in this case proves to the contrary; there was no control over Parkside sufficient to create an agency relationship. Likewise, there is no evidence of a joint venture.

In Pennsylvania, the elements of agency are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Scott v. Purcell, 490 Pa. 109, 415 A.2d 56, 60 (Pa. 1980) (quoting Restatement (Second) of Agency § 1, Comment b (1958)).

The burden of establishing agency rests upon the party asserting it. Scott, 415 A.2d at 61 n.8 (citing Girard Trust Bank v. Sweeney, 426 Pa. 324, 231 A.2d 407 (Pa. 1967)). Authority may be "implied or inferred from the words used, from customs and from the relations of the parties." RESTATEMENT (SECOND) OF AGENCY § 7, cmt. c (1958). Implied authority "has been variously defined. It has been held to be actual authority given implicitly by a principal to his agent." Lind v. Schenley Indus., Inc., 278 F.2d 79, 84-85 (3d Cir. 1960). It has also been defined as the "authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority." CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 386 (3d Cir. 2004) (quoting Bolus v. United Penn Bank, 363 Pa. Super. 247, 525 A.2d 1215, 1221 (Pa. Super. Ct. 1987)). "Implied authority is found when the facts indicate the principal's intent to confer agency authority." Khurana v. Strategic

8

Distribution, Inc., No. 07-5188, 2008 U.S. Dist. LEXIS 100456, 2008 WL 5191816, at *3 (E.D. Pa. Dec. 10, 2008) (citing 4 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1097 (3d ed. 1987)).

Further, this court has defined a joint venture as "an association of persons or corporations who by contract, express, or implied, agree to engage in a common enterprise for their mutual profit." Richardson v. Walsh Constr. Co., 334 F.2d 334, 336 (3d Cir. 1964). The Richardson court further described the essential elements of a joint venture as: "(a) a joint proprietary interest in, and a right to mutual control over, the enterprise; (b) a contribution by each of the parties of capital, materials, services or knowledge; and (c) a right to participate in the expected profits." Id. Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945, *13, 14 (E.D.Pa. December 23, 2009) (holding existence of joint venture not substantiated).

Courts have generally held that mortgage brokers are not agents of lenders. In the broker-lender context, if the evidence indicates that "the broker had a close relationship or far more authority than that of simply bringing the borrower and lender together,' then the Court 'may deem the broker to be an agent of the lender." Whitley v. Taylor Bean & Whitacker Mortgage Corp., 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) (quoting Taylor, Bean & Whitaker Mortgage Corp. v. Cebulak, No. 03 C 7425, 2004 U.S. Dist. LEXIS 18803, 2004 WL 2106605, at *12 (N.D. Ill. Sept. 20, 2004)). The key to determining the agency relationship is the principal's consent to the agent acting on its behalf and the principal's control of the agent. See RESTATEMENT (SECOND) OF AGENCY § 1.

In Mills v. Equicredit Corp., 344 F. Supp. 2d 1071, 1078 (E.D. Mich. 2004), the plaintiffs sued First Discount Mortgage and Equicredit for common law fraud and misrepresentation. First Discount Mortgage was the mortgage broker, and Equicredit was the lender. Id. at 1073. The

9

plaintiffs never communicated with Equicredit prior to closing the relevant transactions, but alleged that First Discount Mortgage and Equicredit had an agency relationship, and First Discount Mortgage's misrepresentations should be attributed to Equicredit. Id. at 1078. The court explained that:

> First Discount and EquiCredit's agreement which set forth the requirements for First Discount's submission of a loan application expressly stated that First Discount was not an agent of EquiCredit. Plaintiffs have testified that they had no reason to believe that First Discount was an agent of EquiCredit. Plaintiffs were never told that First Discount was EquiCredit's agent. Plaintiffs also signed a Mortgage Broker/Borrower Agreement which stated that First Discount would act as their agent in obtaining a lender. Id. at 1078 (internal citations omitted). The court concluded that the plaintiffs did not bring forth sufficient evidence to support their claim of an agency relationship, and the court granted summary judgment in favor of Equicredit. Id.

In Hawthorne v. American Mortgage, Inc., 489 F. Supp. 2d 480, 481 (E.D. Pa. 2007), the plaintiffs sued American Mortgage, their mortgage broker, and Countrywide, the mortgage lender. Countrywide moved for summary judgment, arguing that the plaintiffs did not communicate with it during the loan application process, and did the plaintiffs enter into a contract with it. The plaintiffs argued that American Mortgage's breach of contract and misrepresentations were attributable to Countrywide, pursuant to an agency theory. The plaintiffs relied upon four facts to establish an agency relationship: (1) Countrywide provided American Mortgage access to its internal proprietary software, (2) Countrywide left all communications to be made with borrowers with American Mortgage and other brokers, (3) American Mortgage was a correspondent bank that could close mortgages itself and subsequently place those loans with Countrywide, and (4) Countrywide on occasion referred to American Mortgage as its "partner." Id. at 484. The court granted Countrywide's motion for summary judgment, stating "[t]hese four pieces of evidence, when scrutinized singly or jointly, do not add up to an agency relationship." Id. at 484-85. See also Garczynski v. Countrywide Home Loans, Inc., No. 08-

5128, 656 F. Supp. 2d 505, 2009 U.S. Dist. LEXIS 71417, 2009 WL 2476622, at *4 (E.D. Pa. Aug. 12, 2009), (granting motion to dismiss where control not averred); Morilus v. Countrywide Home Loans, Inc., No. 07-900, 651 F. Supp. 2d 292, 2008 U.S. Dist. LEXIS 103556, 2008 WL 5377627 (E.D. Pa. Dec. 22, 2008). ("[w]hile control is a key factor in determining whether an agency was intended, it must be of such a high degree that the purported agent is deemed to have had almost no independence."). In Morilus the court explained that the lender in the case merely "was dictating the base requirements for any business transactions. Assuming that [the brokers] were fully compliant, the fact that they may have adhered to those standards does not necessarily indicate that [the lender] 'controlled' them." Id. In particular, the broker was an independent broker, who could send a deal to any one of over one-hundred lenders. Id. at *7, but see In Palmer v. Wells Fargo Bank, N.A., No. 06-4504, 2008 U.S. Dist. LEXIS 2205, 2008 WL 141752, at *1 (E.D. Pa. Jan. 10, 2008) (denying summary judgment where plaintiff adduced sufficient evidence upon which reasonable fact-finder could conclude that mortgage broker acted as Wells Fargo Bank's agent in obtaining hazard insurance, because of testimony that an executive at Wells Fargo Bank instructed broker how to prepare the plaintiff's loan application in order to ensure the application would be approved).

In support of Plaintiffs' allegations, they set forth the following recitations. As will be demonstrated below, not one is supported by any evidence:

- [e]ach party, Defendant, Option One and Parkside, contributed capital, services, skill, and knowledge to the transaction to enable the closing (Amd. Compl. at ¶ 43).

- [p]rofits were shared between Parkside and Option One derived from the closing and loan (Amd. Compl. at ¶ 44).

- Option One submitted to Parkside a rate sheet of available interest rates and loan products which Parkside chose the ultimate closing rate and loan terms which became effective after Parkside with Plaintiffs, satisfied Option One's conditions, which loan application...was submitted by Parkside to Option One, all resulting

  in Parkside and Option One's right of mutual control over the transaction (Amd. Compl. at ¶ 45).

- In addition to these split fees deriving from finance charge under-disclosures...and over-charges...the YSP to Parkside and disclosed, properly attributable finance charge...to Option One makes the loan transaction a joint venture between Option One and Parkside (Amd. Compl. at ¶ 46).

- [t]his was the only transaction between Plaintiffs, Parkside and Option One, and, upon information and belief, relatively one of the few between Parkside and Option One (Amd. Compl. at ¶ 47).

- Parkside was directed by Option One to do all that was necessary to make the loan close upon the ultimate terms for Parkside and Option One's ultimate profit (Amd. Compl. at ¶ 48).

- Plaintiffs believed and were lead to believe that Parkside was acting on behalf of Option One in formulating the ultimate loan terms. In fact, Parkside acted on behalf of Option One in formulating the ultimate loan terms (Amd. Compl. at ¶ 49).

- Option One, with Parkside, acted pursuant to a common design or plan, and rendered substantial assistance to Parkside to effectuate the bait and switch (Amd. Compl. at ¶ 50).

- Upon information and belief, Option One was aware or should have been aware that Parkside had applied Plaintiffs for prior loans and that Plaintiffs had, in fact, qualified for and were promised the original loan terms by Parkside ("bait") and Option One nonetheless not only ratified, but encouraged Parkside's change ("switch") of Plaintiffs to the ultimate loan terms for Option One's ultimate benefit (Amd. Compl. at ¶ 51).

  Rather, what the evidence proves is that Parkside Mortgage was not an agent of Option One. Sugimoto Trans. at 17:13-22. The agreement between Option One and Parkside Mortgage states that "[n]othing herein contained shall be deemed or construed to create a partnership, agency or joint venture between the parties hereto. The services of Broker shall be rendered as an independent contractor and not as agent for the Lender, and Broker shall not represent to any applicant(s) that it is an agent for the Lender. This Agreement creates a non-exclusive relationship between the parties." See Mortgage Broker Agreement, ¶ 15 (Exh. G). In addition, the president of Option One testified that he is not aware that there was any special relationship

12

between Option One and Parkside Mortgage. Sugimoto Trans. at 18:5-22. There is not one shred of evidence to the contrary.

In contrast, there is evidence that Parkside and Option One did not have a close relationship. Parkside only ever submitted fifteen (15) loan applications to Option One, only three of which closed. Sugimoto Trans. at 46:1-47:13; see also Amd. Compl. at ¶ 47. According to Mr. Sugimoto, Parkside Mortgage was considered a small volume broker. Sugimoto Trans. at 47:14-18. Further, Parkside Mortgage was able to, and did, submit loan applications to other lenders (as evidenced by the timing of the submission of the Plaintiffs' loan application dated June 26, 2007 to Option One on the same day for a settlement scheduled to occur 2 days later). See Exhibits D and E.

Option One did not determine which loan applications taken by Parkside Mortgage, if any, Parkside Mortgage would submit to Option One for approval. See Affidavit of Dale Sugimoto, ¶ 3, a true and correct copy of which is attached hereto as Exhibit "H." Indeed, Option One did not control any aspect of Parkside Mortgage's business. Id. Parkside Mortgage had no authority to act on Option One's behalf. Id. at ¶ 4. Further, Option One never intended to, and in fact did not, convey actual or implied authority to Parkside Mortgage. Id. at ¶ 5. At all times Parkside Mortgage was an independent contractor, not an agent of Option One (id. at ¶ 6) and Option One was never in a joint venture with Parkside Mortgage. Id. at ¶ 7. There is not one shred of evidence submitted by Plaintiffs that refutes any of these facts. Indeed, Plaintiffs averment that Johnson had a "fiduciary, special duty to Plaintiffs" (Amd. Compl, ¶ 41), undermines and contradicts their agency/joint venture theories.

C.  **THERE WAS NO BAIT AND SWITCH**

Plaintiffs allege that though they had a loan approval with Wachovia, Johnson re-directed them to his brokerage, Parkside Mortgage and ultimately to Option One. Amd. Compl., ¶ 51.

This, they argue was a "bait and switch," bringing them in the door with the promise of one thing and later switching them to something else.

These allegations have not been proven and in fact are contradicted by other allegations in the Amended Complaint. Specifically, despite having a preapproval from Countrywide for 100% financing, that was not good enough and they shopped around for a better loan. Id. at ¶ 24. Wachovia "matched the terms of the fixed rate from Countrywide, 100 percent financing with a fixed 7.625% rate." Id. at ¶ 26. Plaintiffs decided to go with Wachovia even though the terms were not better. Id. at ¶ 27.

Once the Plaintiffs submitted the required documentation to Wachovia's underwriting department, it was determined by Wachovia that the Plaintiffs did not qualify for the program for which they were preapproved. Id. at ¶ 36. The Plaintiffs had options, however, they could have gone back to Countrywide, approached another mortgage broker or lender or cancelled the agreement of sale pursuant to the mortgage contingency clause contained in paragraph 6. See Exhibit D.

Specifically, paragraph 6(D)4 of the Agreement of Sale provides that [i]f …the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer…and this Agreement will be VOID. See id. at D. Plaintiffs could have walked away. However, instead of cancelling the Agreement of Sale when they were informed that they could not get the financing from Wachovia (as specified in paragraph 6(A) of the Agreement of Sale), they opted to stay with Johnson and submit applications to various lenders through his brokerage, Parkside. Amd. Compl. at ¶ 37.

### C. THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' UTPCPL CLAIM

Plaintiffs allege that it is Option One's actions in splitting various fees and in underdisclosing those fees that give rise to a violation of the UTPCPL. They base this preposterous conclusion on actions that might typically be claimed to constitute violations of TILA or RESPA. Specifically, Plaintiffs allege that:

> The actual prepaid finance charge was underdisclosed (Amd. Compl. at ¶ 19);
>
> The HUD-1 included charges that were not incurred or were not customary and thus not changeable [sic] (Amd. Compl. at ¶ 20)
>
> The under disclosed pre-paid finance charge ($147.70) and pre-paid finance charges which were neither incurred nor customary ($3,444.50) were fees derived from Plaintiffs from the proceeds of the loan which, in addition to the yield spread premium, were fees split between Option One and Parkside for the loan origination and brokerage, respectively (in violation of RESPA (Amd. Compl. at ¶ 21).

These actions, they argue, constitute violations of the UTPCPL, not because they violate TILA or RESPA but because they are independently fraudulent or deceptive. In reality, this nothing more than a thinly veiled attempt to accomplish through the back door what they could not accomplish through the front.

The Court has already determined that Plaintiffs did not sufficiently plead a RESPA violation in the Complaint and that any RESPA claim is time-barred. The allegations concerning kick-backs, regardless of whether Plaintiffs are now calling them a UTPCPL violation, have not changed from the Complaint to the Amended Complaint. See Complaint and Amd. Compl. To now argue that the same actions instead violate a different law to avoid the pleading deficiency or statue of limitations is an attempt to

circumvent federal law and this Court's prior Order. Likewise, a TILA violation cannot stand because it is time-barred by the one year statute of limitations. 15 U.S.C. § 1640(e) (the action must be brought "within one year of the occurrence of the violation" which was the date of settlement). Plaintiffs cannot use the alleged action of a TILA underdisclosure, which requires the application of TILA's requirements to prove, to make the leap to a violation of a different statute.

Further, the record is devoid of evidence that any fees were underdisclosed or overcharged (in fact, Plaintiffs admitted that finance charges in the amount of $3,729.50 were reasonable and bona fide under TILA such that they could not also have been split with Parkside Mortgage, see Amd. Compl., ¶¶ 19-20) or that any fees were split with Parkside Mortgage. Plaintiffs simply rely on the averments in the Amended Complaint which is inadequate at the summary judgment phase of the case when the parties are held to a higher standard and charged with having actual evidence in support of their allegations. Without evidence, even if Plaintiffs legal theory were correct, which it is not, the claim that Option One directly violated the UTPCPL fails as a matter of law, entitling Option One to judgment in its favor.

        **1.    Plaintiffs Cannot Make Out A Claim Under The Catch-All Provision Regardless Of Whether Fraud Is Required**

To bring a cause of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Hunt v. United States Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (quoting Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425, 438 (Pa. 2004)). In Hunt, the Third Circuit rejected the argument that the addition of the word "deceptive" to the catch-all

provision negated the need to prove justifiable reliance and concluded that it is a requirement. Hunt, 538 F.3d at 225.

To state a claim under the catch-all provision, Plaintiffs are charged with proving the elements of common law fraud by clear and convincing evidence. Weinberg v. Sun Company, Inc., 565 Pa. 612, 618, 777 A.2d 442, 446 (2001). That being the case, the UTPCPL claim fails.

In a private action, as opposed to one commenced under Section 201-4 by the Attorney General, a plaintiff must "suffer an ascertainable loss as a result of a defendant's prohibited action." Weinberg, 565 Pa. at 618, 777 A.2d at 446. The Supreme Court went on to state"[t]hat this means, in this case, a plaintiff must allege reliance. . . ." Id. The Supreme Court stressed that **"[t]he UTPCPL's 'underlying foundation is fraud prevention. . . . Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation."** Id. (emphasis added; citation and footnote omitted). Thus, the Superior Court has repeatedly held that fraud is required to be proved in connection with Section 201-2(4)(xxi). Skurnowicz v. Lucci, 798 A.2d 788, 794 (Pa. Super. 2002); Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000).

Even were clear and convincing proof common law fraud not required for a claim under the catch-all provision of the UTPCPL, Plaintiffs' claim still fails. In In re Patterson, the court tried to articulate the standard for the amended catch-all provision: "[a] deceptive act is 'the act of intentionally giving a false impression' or 'a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." In re Patterson, 263 B.R. 82, 94 (Bankr. E.D.Pa. 2001). Thus, a generalized claim that conduct has some tendency to deceive is insufficient to support a claim under the UTPCPL's catch-all

provision. The consumer must demonstrate intent, recklessness, falsity, knowledge, and detrimental reliance. Plaintiffs have offered no such evidence.

Accordingly, Plaintiffs have failed to state any claim under the UTPCPL with the requisite particularity. Weinberg, 777 A.2d at 446 (holding that UTPCPL claims require proof of actual reliance); see also Grant v. Kingswood Apartments, 2001 WL 1876343, at *3-5 (E.D. Pa. Oct. 15, 2001); Sexton v. PNC Bank, 792 A.2d 602, 607 (Pa. Super. 2002) (explaining that Weinberg establishes that a plaintiff must establish "his specific reliance on some conduct or representation by the defendant" to assert a private cause of action under the UTPCPL).

It is Plaintiffs' burden at the summary judgment stage to show the Court that there is sufficient evidence of the genuine material facts on which the Court could base a finding in favor of Plaintiffs at trial, Anderson, 477 U.S. at 249, and Plaintiffs must prove their case by a preponderance of the evidence. Plaintiffs cannot meet their burden. There is no *evidence* of fraud or deception by Option One in the record. Furthermore, there is certainly no evidence of Plaintiffs' reliance on any such action or inaction.

Plaintiffs have asserted but have not proven that the fees charged in lines 804-811, 1103, 1104, 1106, 1112 and 1113 should also have been included in the finance charge disclosed. Amd. Compl., ¶ 19. Directly asked "what is your support for including the charge found in line [804] of the HUD-1 in the finance charge as set forth in Paragraph 19 of the Complaint?" for each HUD line item, Plaintiffs evasively responded:

> Objection. Plaintiffs object to this interrogatory on the grounds that it is vague, unduly burdensome and not reasonably calculated to the discovery of admissible evidence. Further, the HUD-1 disclosure is a document and as such, speaks for itself. Additionally, the Defendants are in the best position to have knowledge as to the reasons certain amounts identified on the HUD-1 were charged to Plaintiffs. By way of further answer, the term "finance charge" is a defined term pursuant to the statute as well as a term of art. By way of further answer, please see Plaintiffs' deposition transcripts.

See Second Set of Interrogatories and Responses, thereto, ¶¶ 8-20. As this response shows, Plaintiffs have no support for their bald averments and in fact, state that Option One is in the best position to make the finance charge determination, which it did yet that is what Plaintiffs are contesting. Despite the reference to their deposition transcripts, a thorough review of same does not shed any light on the question posed. Accordingly, since the record is closed and there is no proof that the finance charge was underdisclosed or any fees were "kicked-back", this allegation cannot support a UTPCPL claim.

In addition, it is well-settled that the UTPCPL "does not impose liability on parties who have not themselves committed any wrongdoing." *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993); *accord Colanzi v. Countrywide Home Loans, Inc.*, No. 07-3637, 2008 WL 483446 (E.D. Pa. Feb. 22, 2008); *McMaster v. CIT Group/Consumer Fin., Inc.*, No. 04-339, 2006 WL 1314379, at *11 (E.D. Pa. May 11, 2006); *Canty v. Equicredit Corp. of Am.*, No. 01-5804, 2003 WL 21243268, at *3 (E.D. Pa. May 8, 2003). Option One, therefore, cannot be held liable for any action or inaction by Parkside Mortgage of Johnson.

### III. CONCLUSION

For all the foregoing reasons, Defendant Option One Mortgage Corporation, n/k/a Sand Canyon Corporation respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgment in favor of Option One.

Date: July 14, 2010

*s/ Barbara K. Hager*
Barbara K. Hager
**Reed Smith LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

                              Counsel for Option One Mortgage Corporation,
                              n/k/a Sand Canyon Corporation