IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL R. LAIDLEY, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHAWN JOHNSON, et al. | : | No. 09-395 |

MEMORANDUM OPINION

**Goldberg, J.**                                                                                             July 11, 2011

Plaintiffs, Jamal Laidley and Brian Harvey, bring this action against their mortgage lender, Option One Mortgage Corporation, under the catchall provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"). This provision prohibits providers of goods and services from engaging in any fraudulent or deceptive conduct that is likely to create confusion or misunderstanding. 73 PA. STAT. ANN. §§ 201-2(4)(xxi), 201-3.

Before the Court is Defendant's Motion for Summary Judgment. For the following reasons, Defendant's motion will be granted.

**I.      FACTUAL BACKGROUND**[1]

In early 2007, Plaintiffs were first time home buyers seeking a mortgage. They received pre-approval from Countrywide Mortgage for a 30 year, 7.625% fixed rate mortgage with 100% financing. Seeking competitive terms, Plaintiffs contacted Shawn Johnson, a mortgage broker employed by Wachovia whom Plaintiff, Brian Harvey, had heard speak at a business luncheon. (Pl.'s Resp. at 4; Harvey Depo. p. 22:6.)

Wachovia, through Johnson, offered to match the terms of the pre-approval Plaintiffs had

---

[1] Unless otherwise indicated, the following facts are undisputed.

received from Countrywide. Plaintiffs chose to move forward with Wachovia, trusting Johnson and preferring that their lender have a local branch. With pre-approval from Wachovia in hand, Plaintiffs entered into an agreement to purchase the property they had been interested in. (Def.'s Br. at 3-4.)

Plaintiffs desired to close on the mortgage before their lease expired, "around May-June" of 2007, and contend that Johnson informed them they would be able to close on time. However, underwriting delays occurred at Wachovia and Plaintiffs' pre-approved loan terms were altered, requiring a down payment and 97% financing instead of 100%. Ultimately, Wachovia was unable to approve Plaintiffs' loan. After this setback, Johnson encouraged Plaintiffs to utilize the services of Parkside Mortgage (hereinafter, "Parkside"), a mortgage brokerage firm he owned with his brother. Johnson informed Plaintiffs that Parkside could locate comparable mortgage terms to those they had been offered by Wachovia. (Pl.'s Resp. at 4-5.)

Plaintiffs chose to proceed with Parkside, however they were subsequently informed by the Johnson brothers that Parkside would not be able to match the terms of Wachovia's initial preapproval. Plaintiffs contend that the Johnson brothers also told them that their interest rate would increase.[2] On June 26, 2007, Parkside submitted Plaintiffs' loan application to Defendant, Option One Mortgage Corporation. Shortly thereafter, on July 3, 2007, Plaintiffs executed a mortgage note in favor of Option One. The mortgage came with an adjustable 9.75% rate, required 10% down and a 2% broker fee, the same terms contained in the loan application submitted days before. (Def.'s Br. at 4-5; Pl.'s Br. at 3.)

---

[2] Without providing any specific dates in their complaint, Plaintiffs assert that Parkside informed them they would receive a 9.625% interest rate from Option One prior to Parkside submitting their loan application. See (Am. Compl. ¶¶ 37-42.) The evidence of record does not indicate whether Defendant communicated this information to Parkside prior to the submission of Plaintiffs' loan application.

**II.     STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

**III.    DISCUSSION**

Plaintiffs assert two theories under the catchall provision of the UTPCPL. First, Plaintiffs claim that Defendant is directly liable for under-disclosing pre-paid finance charges on the Truth in Lending form (hereinafter, "TIL"). As evidence of the under-disclosure, Plaintiffs point to a discrepancy between the total finance charge derived from the TIL form and the amount as totaled on the Department of Housing and Urban Development (hereinafter, "HUD") settlement sheet. This discrepancy totals $107.70.[3] Second, Plaintiffs allege that Defendant is vicariously liable for the fraudulent and/or deceptive representations made by Parkside because the companies were engaged

---

[3] Plaintiffs miscalculated the purportedly under-disclosed finance charge in their motion by listing "Tax Service Contract to Premier" as "$60" instead of "$80" as listed on line 808 of the HUD settlement sheet. The correct calculation lowers the charge from $127.70 to $107.70.

in a joint venture. Defendant claims that Plaintiffs have not demonstrated liability under either theory. We agree with Defendant.

The UTPCPL protects consumers "by providing a private right of action for persons who sustain a loss because they were subject to unfair or deceptive trade practices." Garczynski v. Countrywide Home Loans, Inc., 656 F.Supp.2d 505, 509 (E.D.Pa. 2009) (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008)). The UTPCPL lists twenty unlawful practices and, as detailed above, also includes a catchall provision which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 PA. STAT. ANN. §§ 201-2(4)(xxi), 201-3. Under the catchall provision, a plaintiff must prove either deceptive or fraudulent conduct.

A plaintiff alleging fraudulent conduct under the catchall provision must prove the elements of common law fraud. See Seldon v. Home Loan Services, Inc., 647 F.Supp.2d 451, 469 (E.D.Pa. 2009). Under Pennsylvania law, these are: (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance; and (6) an injury was proximately caused by the reliance. See Santana Products, Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005).

A claim of deceptive conduct under the catchall provision requires a plaintiff to prove only three elements. First, the plaintiff must show a deceptive act, which is "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." Seldon, 647 F.Supp.2d at 470. Second, a plaintiff must show justifiable reliance. Id. Third, a plaintiff must show that his or her justifiable reliance caused ascertainable loss. Id.

    **A.**    **Direct Liability: Truth in Lending Form**

Plaintiffs claim they "justifiably relied" on the allegedly under-disclosed finance charges reported on the TIL form completed by Defendant, and argue that the discrepancy between the finance charges on the TIL and HUD forms demonstrates this under-disclosure. (Am. Compl. ¶ 42). While Plaintiffs bring their claim under the catchall provision of the UTPCPL, they do not clearly state whether they allege fraudulent or deceptive conduct.[4]  Given this vagueness, Defendant surmises that Plaintiffs are attempting to repackage a federal Truth-in-Lending Act violation (hereinafter, "TILA") 15 U.S.C. § 1601 et seq., under the UTPCPL.[5]

The TILA provides a private cause of action for consumers against lenders who fail to make required financial disclosures relating to credit transactions, including those made on TIL forms. 15 U.S.C. § 1640(a). To the extent that Plaintiffs predicate their UTPCPL claim on a time barred TILA violation, their attempt is impermissible and fails outright. See Santiago v. Eastern Sav. Bank, FSB, 2011 WL 710216, at * 3 (E.D.Pa. Feb. 28, 2011) (holding a TILA violation is not a per se UTPCPL violation); Nulman v. Money Warehouse Inc., 2011 WL 830288, at * 2 (E.D.Pa. Mar. 10, 2011); Garczynski, 656 F.Supp.2d at 509; Morilus v. Countrywide Home Loans, Inc., 651 F.Supp.2d 292, 309 (E.D.Pa. 2008). Several courts in this district have reasoned that allowing a plaintiff to bring

---

[4] Specifically, Plaintiffs assert that "a violation [of the UTPCPL] is deemed to have occurred where there is a loss related to fraudulent ("unfair") conduct, as Appellants' [sic] allege, or that there was a representation or a course of conduct that had a tendency to confuse ("deceptive") and likely effected the decision to enter into the mortgage transaction[.]"  However, Plaintiffs also emphasize the more lenient deceptive conduct prong. We are therefore unable to clearly discern whether Plaintiffs bring a claim for fraudulent or deceptive conduct under the catchall provision.

[5] In enacting TILA, Congress sought to provide for "meaningful disclosure of credit terms . . . to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). A one year statute of limitations applies to TIL form disclosure violations under the TILA. 15 U.S.C. § 1640(e).

an otherwise time barred TILA claim under the guise of a UTPCPL violation would contravene congressional intent. See, e.g., Santiago, 2011 WL 710216, at * 3; Garczynski, 656 F.Supp.2d at 515; Morilus, 651 F.Supp.2d at 309.

Further, irrespective of whether Plaintiffs are attempting to predicate their UTPCPL claim on a TILA violation, they have failed to adduce sufficient evidence of justifiable reliance, an essential element of a claim for either fraudulent or deceptive conduct under the catchall provision. To show justifiable reliance a plaintiff must provide evidence demonstrating how his knowledge of a mortgage loan's actual terms would have altered his decision to execute the mortgage.[6] Plaintiffs have not provided evidence from which a reasonable juror could conclude that if, in fact, Plaintiffs had been aware of the allegedly under-disclosed $107.70 in finance charges they would not have executed the mortgage note. For that reason, Plaintiffs have failed to raise a genuine issue of material fact as to Defendant's direct liability under the UTPCPL.

### B. Vicarious Liability: Joint Venture

Plaintiffs also allege that Defendant is responsible for the deceptive and/or fraudulent practices of Parkside Mortgage because the two companies engaged in a joint venture. A joint venture is defined as "an association of persons or corporations who by contract, express or implied, agree to engage in a common enterprise for their mutual profit." Richardson v. Walsh Constr. Co.,

---

[6] Compare Seldon, 647 F.Supp.2d at 470-71 (holding plaintiff failed to allege justifiable reliance when he did not allege how his knowledge of mortgage loan's actual terms would have changed his conduct in signing the mortgage), with Levine v. First American Title Ins. Co., 682 F.Supp.2d 442, 467 (E.D.Pa. 2010) (holding plaintiffs successfully alleged justifiable reliance where plaintiffs stated they would not have paid a higher premium for title insurance if they had known the actual rate), and Coleman v. Commonwealth Land Title Ins. Co., 684 F.Supp.2d 595, 619 (E.D.Pa. 2010) (same). See also Hunt v. U.S. Tobacco Co., 538 F.3d at 227 (holding that plaintiff failed to allege justifiable reliance where he did not claim defendant's deception induced him to engage in any detrimental activity).

334 F.2d 334, 336 (3d Cir. 1964).  The party asserting the existence of a joint venture has the burden of proving it.  McRoberts v. Phelps,138 A.2d, 439, 443-44 (Pa. 1958).

Under Pennsylvania law, a joint venture has at least three essential elements:

1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, material, or money;

2) profits must be shared among the parties; [and]

3) [t]here must be a joint proprietary interest of mutual control over the subject matter of the enterprise[.]

Keeler v. Int'l Harvester Used Truck Ctr., 463 A.2d 1176, 1178, (Pa.Super. 1983) (reflecting that a joint venture also "[u]sually" entails "a single business transaction rather than a general and continuous transaction"); see Santiago v. Eastern Sav. Bank, FSB, 2011 WL 710216, at *2 (E.D.Pa. Feb. 28, 2011).

Even assuming Plaintiffs can prove the first two elements, they have not adduced sufficient evidence to show Defendant and Parkside shared mutual control over the subject matter of their business relationship, in this case, the loan.  Where one party to a business relationship retains sole discretion over the subject matter of the relationship, mutual control cannot exist.  See Santiago v. Eastern Sav. Bank, FSB, 2011 WL 710216, at *3 (holding that a written agreement between mortgage lender and broker which gave lender "sole discretion" over final loan decisions demonstrated lack of mutual control); Bernstein v. Balli Steel, PLC, 2008 WL 862470, at * 5 (E.D.Pa. Mar. 31, 2008) (holding that no mutual control existed between business partners where one party had "sole discretion" to enter into steel transactions, despite evidence that: (1) defendant described business as a joint venture; (2) e-mails and written correspondence listed both parties in the alleged joint venture; and (3) parties closely cooperated in business matters).

Here, the Mortgage Broker Agreement between Parkside and Defendant evinces a lack of mutual control between those entities. It provides, in pertinent part, that "Lender's [Option One's] determination as to the credit-worthiness of any applicant is final and conclusive as to the parties." Thus, under the terms of the agreement, the discretion as to whether to approve or deny the loan rests solely with Defendant. (Doc. No. 94, Ex. G., ¶ 3.) Further, the agreement states that "Nothing herein contained shall be deeded or construed to create a partnership, agency, or joint venture between the parties hereto." Id. ¶ 15.

Plaintiffs provide no evidence to suggest that the language contained in the Mortgage Broker Agreement does not reflect the true business relationship between the parties. Instead, Plaintiffs acknowledge that "[i]t was Option One which controlled Parkside's ability to consummate the closing" and that "Option One primarily controlled the loan's origination[.]" (Pl.'s Resp. at 9-10) (emphasis added.) Plaintiffs' statements, therefore, undermine their own position.

Plaintiffs' remaining argument with respect to mutual control is that Defendant and Parkside shared control of the loan by splitting and "mutually deriving fees." (Pl.'s Resp. at 10.) Deriving fees mutually from the loan, even if true, has been found insufficient to support a finding of mutual control and Plaintiffs cite no authority to suggest otherwise. Cf. Santiago, 2011 WL 710216, at * 3 ("The bare claim that fees were split does not constitute evidence to avoid summary judgment").

Even when viewed in a light most favorable to Plaintiffs, the evidence of record is not sufficient to support a finding of a joint venture between Defendant and Parkside. Therefore, Defendant cannot be vicariously liable for any alleged violations of the UTPCPL committed by Parkside.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's "Motion for Summary Judgment" (Doc. No. 94) is granted. Our order follows.